IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CINDIE WELTCH

No. CV-10-154-HZ

                    Plaintiff,

OPINION AND ORDER

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

_____ Defendant. _____

Tim Wilborn
WILBORN LAW OFFICE, P.C.
P.O. Box 2768
Oregon City, OR 97045

        Attorney for Plaintiff

Dwight Holton
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY

1 - OPINION AND ORDER

1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Leisa A. Wolf
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Claimant, Cindie Weltch ("Weltch"), brings this action pursuant to the Social Security

Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner of Social Security ("Commissioner").  The Commissioner denied Weltch's

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42

U.S.C. § 423.  For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

     Weltch filed an application for DIB on May 19, 2005, alleging an onset date of March 23,

2000.  Tr. 24.  She claims she was under a disability within the meaning of the Social Security

Act from March 23, 2000, through December 31, 2005.  Tr. 24, 71.  Her application was denied,

and she requested a hearing before an administrative law judge ("ALJ") of the Social Security

Administration ("SSA").  On May 27, 2008, the ALJ found Weltch was not disabled.  Tr. 37.

The Appeals Council denied her request for review on December 11, 2009.  Tr. 4-6.

## FACTUAL BACKGROUND

     The parties are familiar with the medical and other evidence of the record.  I will not,

therefore, repeat the evidence except as necessary to explain my decision.

2 - OPINION AND ORDER

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Commissioner, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability.Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## **THE ALJ'S DECISION**

At step one, the ALJ determined Weltch had not engaged in substantial gainful activity since her alleged disability onset date.  Tr. 26, Finding 2.  At step two, the ALJ found Weltch had the following severe impairments: congenital malalignment of the knees with history of tear and chondromalacia, obesity, cervical degenerative disc disease, and carpal tunnel syndrome in the later part of the relevant period.  Id., Finding 3.

At step three, the ALJ found Weltch's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 30, Finding 4.  The ALJ found Weltch has the RFC "to sit for two hours at a time, for a total of eight hours in an eight-hour workday with normal breaks; stand and/or walk for 30 minutes at a time, for a total of four to six hours in an eight-hour workday; lift 50 pounds occasionally, 20 pounds frequently, and ten pounds constantly; squat, crouch, kneel, and stair climb up to 5% of the day. . . . and during the later part of the relevant period, . . . was limited to occasional overhead reaching and no repetitive use of her hands."  Tr. 30, Finding 5.

At step four, the ALJ found Weltch unable to perform her past relevant work.  Tr. 35. The ALJ also found Weltch had acquired work skills from past relevant work, including the "ability to communicate verbally, which involved skills of resolving complaints, discussing

issues, and suggesting solutions, . . . identifying customer concerns; answering questions;

pointing people in the direction to find answers; and scheduling appointments." Tr. 35-36,

Finding 9.

At step five, the ALJ found Weltch was able to perform the occupations of customer

service and appointment clerk. Tr. 36-37, Finding 10.

## <u>STANDARD OF REVIEW</u>

A court must affirm the Commissioner's decision if it is based on proper legal standards

and the findings are supported by substantial evidence in the record. <u>Hammock v. Bowen</u>, 879

F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed. <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones</u>

<u>v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "Where the evidence as a whole can support

either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." <u>Massachi v.</u>

<u>Astrue</u>, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. <u>Howard</u>, 782

F.2d at 1486. To meet this burden, the claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12 months.

. . ." 42 U.S.C. § 423(d)(1)(A).

5 - OPINION AND ORDER

## DISCUSSION

### I. Dr. David Buuck's Opinion

Plaintiff argues the ALJ erred by rejecting Dr. Buuck's opinion.[1]  I disagree.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.[2]  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Id. at 831.

Here Dr. Buuck was Weltch's treating physician and performed arthroscopic surgery on her left knee on March 23, 2000.[3]  Tr. 201, 205.  In November 2000, Dr. Buuck, in

---

[1] The ALJ did not reject Dr. Buuck's opinion.  Rather, she "considered" it, but did not accord it "controlling weight."  Tr. 34.

[2] "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).  "Treating physicians" treat the claimant, "examining physicians" examine but do not treat the claimant, and "nonexamining physicians" neither examine nor treat the claimant.  Lester, 81 F.3d at 830.

[3] Dr. Buuck performed arthroscopic surgery with partial medial meniscectomy, microfracture technique of the medial femoral condyle, and debridement of the patella on

(continued...)

"check-the-box" form, indicated Weltch could not lift more than twenty pounds and was precluded from bending, stooping, squatting, or climbing.  Tr. 195.  The ALJ, however, chose to give greater weight to the opinion of Dr. Jennifer Lawler, who examined Weltch one time in November 2000.[4]  Tr. 187.  Dr. Lawler opined Weltch should be limited from pushing, lifting, or carrying heavy objects weighing greater than 50 pounds more than "33% of a workday."  Tr. 191.    The ALJ provided several reasons for discounting Dr. Buuck's opinion.  First, the ALJ reasoned Dr. Buuck "does not explain his opinion or offer medical evidence or findings to support the limitations noted on the form that he completed."  Tr. 34.  She further reasoned that although Dr. Buuck indicated Weltch "could not lift more than twenty pounds and was precluded from bending, stooping, squatting, or climbing," she found those conclusions were not "fully consistent with his evaluation findings at that time, which showed full strength, no atrophy, full range of motion, and only a little tenderness."  Tr. 34.

The record here shows that in November 2000 Dr. Buuck rendered his opinion in the form of checkbox entries indicating Weltch was unable to lift more than twenty pounds, bend, stoop, squat, or climb.  Tr. 34, 195.  On this form he also filled in values indicating Weltch was able to stand only one hour at a time for four hours per day.  Tr. 195.  Dr. Buuck, however, did not explain how or why the evidence supported the conclusions, or cite specific facts upon which the conclusions were based.  Tr. 195.  Opinions on a check-box form or form reports which do not contain significant explanation of the basis for the conclusions, as Dr. Buuck's opinions here,

---

[3](...continued)
Weltch's left knee.  Tr. 201, 205.

[4] The ALJ and the parties refer to the doctor as Dr. Lawler.  The record, however, shows her name is Dr. Lawlor.  Tr. 186.  For the purpose of consistency, I will refer to her as Dr. Lawler.

may be accorded little or no weight.  See, e.g., Crane v. Shalala, 76 F.3d 251, 253 (9th Cir.

1996).

Further, despite his November 2000 assessment, the record shows approximately one

month later in December 2000, Dr. Buuck opined Weltch had reached a "medically stationary

status," had "no atrophy," had "strength [that was] 5/5 in full extension and in flexion," and was

only experiencing "a little tenderness over [her] medial joint line and . . . over the medial femoral

condyle." Tr. 193.  This opinion is inconsistent with the evaluation that he had rendered

approximately one month earlier, where he opined Weltch could not lift more than twenty

pounds and was completely precluded  from performing various functions, including bending,

stooping, squatting, or climbing.

The reasons articulated by the ALJ for not giving Dr. Buuck's opinion "controlling

weight" are clear and convincing and supported by substantial evidence.  See Batson v. Comm'r,

359 F.3d 1190, 1194-95 (9th Cir. 2004) (concluding ALJ's decision to give claimant's treating

physician's opinion minimal weight was proper because it was conclusory, in the form of a

checklist, not supported by objective evidence, and based on subjective complaints and not

objective medical evidence); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)

(concluding ALJ properly rejected treating physician's opinion where treating physician's notes

"provide[d] no basis for the functional restrictions" of the claimant).

Weltch also asserts the ALJ erred because she failed to recontact Dr. Buuck for

clarification.  I disagree.

Although "the ALJ has a special duty to fully and fairly develop the record," that duty is

"triggered only when there is ambiguous evidence or when the record is inadequate to allow for

8 - OPINION AND ORDER

proper evaluation of the evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001)

(citation omitted).  An ALJ "is required to recontact the treating physician to assist in the

development of the record if the medical evidence is inadequate for a disability determination."

<u>Shaner v. Astrue</u>, Civil No. 09-6021-AC, 2010 WL 5789151, at *5 (D. Or. 2010) (citing <u>Thomas

v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002)); <u>see also</u> 20 C.F.R. § 416.912(e) ("We will seek

additional evidence or clarification from your medical source when the report from your medical

source contains a conflict or ambiguity that must be resolved, the report does not contain all the

necessary information, or does not appear to be based on medically acceptable clinical and

laboratory diagnostic techniques.").  Here Weltch has not presented evidence, either before the

ALJ or this court, showing the record is ambiguous or inadequate to evaluate her claim.  Further,

the ALJ here did not find the evidence ambiguous or inadequate.  Accordingly, Weltch's

assertion lacks merit.

Second, the ALJ reasoned Dr. Buuck's opinion was "not consistent with the objective

medical evidence of record or his evaluation findings; other medical opinions . . .; or some of the

claimant's reported activities, such as dancing, driving, and playing tennis."  Tr. 34.  Weltch

asserts that Dr. Buuck's notes indicate dancing and playing tennis worsened her knee pain and

kept her from engaging in activities she enjoyed.

"An ALJ may reject a doctor's opinion that appears to be inconsistent with a claimant's

level of activities."  <u>Browne v. Astrue</u>, No. 08-6394-AC, 2010 WL 3732122, at *10 (D. Or.

2010) (citing <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001)).  Here Weltch reported to

Dr. Buuck that she went dancing and played tennis on more than one occasion.  On September

18, 2002, Weltch told Dr. Buuck "she has pain when she *plays* tennis and notices increased

swelling, as well as when she *occasionally* goes out dancing." Tr. 288 (emphasis added). The ALJ's decision to discount Dr. Buuck's opinion because it was inconsistent with her level of activities is supported by substantial evidence.

Weltch appears to assert the ALJ erred because Dr. Lawler only examined her once, his examination focused only on her workers' compensation claim regarding her knee injury, and because unlike Dr. Buuck, Dr. Lawler did not have the opportunity to consider all of claimant's impairments. I am not persuaded by Weltch's assertion.

The number of times a physician has examined a claimant is only a factor in determining the extent of a *treating* relationship, not an *examining* relationship. Compare 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) with 20 C.F.R. §§ 404.1527(d)(2)-(2)(i), 416.927(d)(2)(2)(i) (listing the frequency of examination as a factor only in a treatment relationship, not in an examining relationship). "This is so because, generally, an examining physician only examines a claimant once. The suggestion that an opinion is inadequate simply because it resulted from a onetime examination leads to the conclusion that all examining physician opinions should be discarded." See Sprout v. Astrue, No. 1:09-cv-01676 SKO, 2011 WL 300210, at *7 (E.D. Cal. 2011) (citing Henderson v. Astrue, 634 F. Supp. 2d 1182, 1192 (E.D. Wash. 2009) (concluding ALJ's reason for rejecting medical opinions because they were based on one-time examinations was erroneous)).

Further, while a treating doctor's opinion generally is accorded superior weight, if that opinion is contradicted by the opinions of examining professionals, which are supported by different independent clinical findings, as they were here, Tr. 188-92, the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen,

881 F.2d 747, 751 (9th Cir. 1989)).  In the present case, the ALJ resolved the conflict, gave less

weight to Dr. Buuck's opinion, and provided specific and legitimate reasons supported by

substantial evidence.  See Lester, 81 F.3d at 830 (stating the Commissioner may reject a treating

doctor's opinion, which is contradicted by another doctor, by providing "specific and legitimate

reasons" supported by substantial evidence).

        Weltch's assertion that the ALJ erred by relying on Dr. Lawler's opinion because it was

offered for the purpose of her workers' compensation claim is also without merit.  The ALJ "may

not disregard a physician's medical opinion simply because it was initially elicited in a state

workers' compensation proceeding." E.g., Howard v. Astrue, No. EDCV 10-914-OP, 2011 WL

333068, at *4 (C.D. Cal. 2011) (citations omitted); see also Lester, 81 F.3d at 832 ("[t]he

purpose for which medical reports are obtained does not provide a legitimate basis for rejecting

them").  Instead, "the ALJ should evaluate the objective medical findings set forth in the medical

reports for submission with the worker's compensation claim by the same standards that [he]

uses to evaluate medical findings in reports made in the first instance for the Social Security

claim." E.g., Howard,No. EDCV 10-914-OP, 2011 WL 333068, at *4 (citations omitted).  While

it may be true that the ALJ need not accept the opinions of a worker's compensation doctor on

the ultimate determination of disability, the ALJ may not discount a doctor's opinion simply

because it arose from a worker's compensation case.  See Id.  Furthermore, although Weltch

argues the ALJ should have given Dr. Buuck's opinion "controlling weight" because unlike Dr.

Lawler, Dr. Buuck had the the opportunity to consider all of claimant's impairments, none of Dr.

Buuck's medical notes show he treated or examined her for anything other than her knee

symptoms.  Tr. 193-214, 264-67.

11 - OPINION AND ORDER

Finally, I find it important to note that although Weltch told Dr. Buuck on September 18, 2002, about the pain and increased swelling she experiences in her left knee when playing tennis and dancing, she failed to tell him she experiences such pain, or any pain at all, when performing more mundane activities, such as walking or standing. Tr. 288. Her failure to do so provides additional evidence supporting the ALJ's decision to not give Dr. Buuck's opinion "controlling weight."

In sum, the ALJ's determination to give Dr. Lawler's opinion greater weight than Dr. Buuck's opinion is supported by substantial evidence.

## II. RFC

Weltch asserts the ALJ erred when rejecting her symptom testimony. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. E.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). In the first stage, the claimant must produce objective medical evidence of one or more impairments "which could reasonably be expected to produce the pain or other symptoms alleged." Id. (Citation omitted). The claimant is not required to show the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it "could reasonably have caused some degree of the symptom." Id. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). When analyzing a claimant's subjective symptoms

12 - OPINION AND ORDER

of pain, the ALJ may consider factors relevant to the symptoms including, *inter alia*, the
claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness
and side effects of medication; treatment, other than medication, that the claimant receives or has
received for relief of pain or other symptoms; or any other measures that the claimant has used to
relieve pain or symptoms. See 20 C.F.R. § 404.1529. To determine whether the claimant's
subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility
evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning
the symptoms, and other testimony by the claimant that appears less than candid; (2) an
unexplained or inadequately explained failure to seek treatment or to follow a prescribed course
of treatment; and (3) the claimant's daily activities. Smolen, 80 F.3d at 1284 (citations omitted).

Because there is no evidence Weltch is malingering, the ALJ could reject Weltch's
testimony only by offering specific, clear and convincing reasons for doing so. Here the ALJ
provided a number of reasons when finding Weltch's testimony not credible.

The ALJ found that "inconsistencies in the record detract[ed] from the reliability of
[Weltch's] reporting." Tr. 32. The ALJ reasoned that although Weltch "reported spending about
half of her time sitting and half of her time lying down, and she reported an ability to walk or
hobble only from the couch to bathroom and an ability to lift on [sic] a negligible amount," the
record indicated she was "able to do housekeeping and shopping tasks in late 2001 and was
playing tennis, dancing, and working out in a gym in 2002." Tr. 32. She also reasoned Weltch
was "noted to walk without a limp and ambulatory aids at examinations" in October 2000,
August 2002, and August 2005. Tr. 32.

13 - OPINION AND ORDER

The ALJ also found the "medical care sought and provided does not fully support the claimant's reports of severe symptoms and limitation." Tr. 32. The ALJ reasoned there appeared to be "gaps in treatment records" where Weltch failed "to see Dr. Buuck for almost two years from December 2000 until August 2002" and "from January 2003 until September 2004." Tr. 32. In addition, the ALJ reasoned that although Weltch "completed skilled physical therapy and achieved her goals of improved functioning, and . . . was advised to continue with a home exercise program, . . . it does not appear that she fully complied with these recommendations." Tr. 32. Lastly, the ALJ reasoned Weltch "used either no medications or only over-the-counter medication for pain, such as Advil and Ibuprofen." Tr. 32.

### A. Exercise

Weltch asserts it was improper for the ALJ to find Weltch less than fully credible for working out at a gym, and at the same time, for faulting her for failing to comply with her physical therapy. I disagree.

Weltch's assertion relies on a selective reading of the ALJ's opinion. When read in context, the record shows the ALJ listed Weltch's gym workouts in 2002 as an example of why her activities were inconsistent with a portion of her testimony stating she could only hobble from the couch to the bathroom and lift only a negligible amount during that same time period. Tr. 32, 320. The ALJ may consider a claimant's inconsistent activities of daily living, including going to the gym, in assessing a claimant's credibility. E.g., Smolen, 80 F.3d at 1284; see also Wallace v. Astrue, No. 09-CV-463-BR, 2010 WL 3155886, at * 5 (D. Or. 2010) (concluding the ALJ did not err when finding claimant's pain testimony not entirely credible where claimant stated, among other things, that he worked out at a gym).

14 - OPINION AND ORDER

The record also shows that, when read in context, the ALJ referred to Weltch's poor compliance with her physical therapy program to show she failed to follow through with prescribed treatment, which included home exercise.  Tr. 32.  The ALJ may properly consider a claimant's failure to follow a prescribed course of treatment in assessing credibility.  See Smolen, 80 F.3d at 1284; see also Snooks v. Astrue, Civil No. 09-6195-MO, 2010 WL 3259913, *3 (D. Or. 2010) (holding ALJ provided specific and convincing reasons for questioning claimant's credibility and discrediting her testimony where claimant failed to follow through on recommendations from doctors to exercise).  Here Weltch does not contest she failed to follow through with her physical therapy program.  Moreover, the record shows she admitted to Dr. Lawler in November 2000 that her compliance with the home exercise program was "poor," and the record does not show that her poor compliance was due to her impairments.  Tr. 187.

**B. Dancing and Playing Tennis**

Weltch repeats an earlier argument that the ALJ erred when considering Weltch's ability to go dancing and play tennis because Dr. Buuck's notes indicated those activities aggravated Weltch's knee injury.

As noted above, the ALJ may consider whether a claimant's daily activities are inconsistent with the claimant's alleged disability.  Rollins, 261 F.3d at 857.  While a claimant need not "vegetate in a dark room," Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987), the Ninth Circuit also holds that where "the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [the claimant]," if the ALJ's interpretation was rational "[a court] must uphold the ALJ's decision where the evidence is susceptible to more than one

rational interpretation." Burch v. Barnhart, 400 F.3d 676, 680-81 (quoting Magallanes v. Bowen, 881 F.2d at 750).

Here the record shows Weltch repeatedly played tennis and danced. Tr. 288. On September 18, 2002, Weltch told Dr. Buuck "she has pain when she *plays* tennis and notices increased swelling, as well as when she *occasionally* goes out dancing." Tr. 288 (emphasis added). Even assuming Weltch told Dr. Buuck that tennis and dancing aggravated her knee injury, Weltch's reported activities are in stark contrast to and inconsistent with her testimony that she could only walk "from the couch to the toilet or the shower or to the kitchen" from March 2000 to July 2003. Tr. 318, 320. Weltch's testimony is also inconsistent with the medical notes of numerous doctors who noted she was getting around without the need of ambulatory aids. See Tr. 196-97 (Dr. Buuck noted in July and October 2000 that Weltch was getting around without ambulatory aids); Tr. 189 (Dr. Lawler noted in November 2000 that Weltch did not require or use any assistive device); Tr. 273, 275 (Dr. Kim Webster, an examining doctor, noted in August 2005 that Weltch did not need or use any assistive device). Finally, as mentioned earlier, I find it notable that Weltch only complained about the pain in her knee on September 18, 2002, when she played tennis and occasionally went out dancing, and made no mention of any pain when she performed less intensive activities, such as walking or standing.

Weltch also asserts Dr. Buuck's notes show she participated in these activities before she was injured in her car accident in July 2003, and therefore such activities may not be possible now because of her injuries to her hands and neck. This assertion, however, is irrelevant because even assuming, *arguendo*, Weltch's argument is true, it fails to cure the inconsistencies noted by the ALJ.

### C. __Sustainable, Full Time Work__

The ALJ assessed Weltch with a RFC "to sit for two hours at a time, for a total of eight hours in an eight-hour workday with normal breaks; stand and/or walk for thirty minutes at a time, for a total of four to six hours in an eight-hour workday; lift fifty pounds occasionally, twenty pounds frequently, and ten pounds constantly; and push and/or pull within the limits of lifting." Tr. 35. She also found Weltch "could squat, crouch, kneel, and stair climb up to 5% of the day" and was "limited to occasional overhead reaching and to no repetitive use of her hands." Tr. 35.

Weltch asserts the ALJ shows only that she is able to engage in sporadic activity and did not assess her ability to work on a regular and continuing basis. I am unpersuaded by Weltch's assertion.

An RFC assessment is ultimately an administrative finding reserved to the Commissioner, based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, as well as observations by family members and the claimant's own subjective symptoms. 20 C.F.R. § 404.1545(a)(3); 20 CFR § 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, <u>available at</u> 1996 WL 374184, at *5.[5] It is an "an assessment of an individual's ability to do sustained work-related physical and mental activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, <u>available at</u> 1996 WL 374184, at *1. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or

_____

[5] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy . . . . Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (citations and quotations omitted).

an equivalent work schedule.  Id.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  Id.  The initial burden of proving the functional limitations that make up the RFC is on the claimant.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir.1995).

The ALJ first identifies the individual's functional limitations or restrictions and assesses his or her work-related abilities on a function-by-function basis.  SSR 96-8p, available at 1996 WL 374184, at *1.  After that, the RFC may be expressed in the following terms of exertional levels of work: sedentary, light, medium, heavy, and very heavy.  Id.  A claimant's RFC is not the least an individual can do despite his or her limitations or restrictions, but the most.  Id.  In assessing the claimant's RFC, the ALJ must consider the whole record and include a discussion of the individual's abilities on that basis.  Id. at *5.

Based on the record here, I conclude the ALJ properly accounted for all of Weltch's mental and physical limitations.  The ALJ's decision contains a thorough discussion and analysis of the objective medical evidence, resolves inconsistencies in the record as a whole, and sets forth a logical explanation of the effects of Weltch's symptoms on her ability to work.  See Id. at *7.  I am also not persuaded by Weltch's assertion that there is "no evidence in the record which is contrary to [her] assertion that she is unable to sit, stand, walk, or use her hands for a combined total of 8 hours, as is required to perform full time work."  Pl.'s Br. at p. 17.  "In assessing a claimant's RFC, the ALJ is not required to invoke a specific magic phrase, such as '8 hours a day five days a week.'"  Sanchez v. Astrue, No. CV 09-109-KI, 2010 WL 2990167, at *17 (D. Or. 2010) (citing Magallanes, 881 F.2d at 755) (quotation omitted).  "The concept of RFC requires work on a regular and continuing basis and therefore, the court may make the

reasonable inference that the ALJ's RFC assessment accounted for such regular work." Id.
(Citations omitted).

Welch also asserts the ALJ failed to apply the appropriate standard set forth in Reddick
v. Chater, 157 F.3d 715 (9th Cir. 1998), where the court concluded the ALJ provided
unsatisfactory reasons for discounting claimant's credibility. Id. at 723. There the court found
the activities claimant described to her doctors were "sporadic and punctuated with rest" and
fully consistent with chronic fatigue syndrome. Id. at 722. It also found claimant's complaints
consistent with the opinions of five doctors who diagnosed claimant with chronic fatigue
syndrome, a sixth doctor who diagnosed possible CFS, and a seventh doctor who diagnosed a
fatigue syndrome. Id. at 723.

By contrast, here the ALJ was not faced with determining Welch's credibility based on
her activities in the context of chronic fatigue syndrome. Further, Welch fails to point to any
doctor in the record, and I find none, who opined she was incapable of working on a regular and
continuing basis.

### D. Obesity

Welch asserts the ALJ erred when she failed to consider how Welch's obesity affects
her ability to sustain activity in combination with her other impairments. The Commissioner
argues Welch failed to identify any functional limitations caused by her obesity.

The SSA recognizes that obesity can cause limitations of function, with the actual
limitations dependent on various factors specific to the individual. SSR 02-1p, available at 2000
WL 628049, at *6. "An assessment should also be made of the effect obesity has upon the
individual's ability to perform routine movement and necessary physical activity within the work

environment. . . . In cases involving obesity, fatigue may affect the individual's physical and

mental ability to sustain work activity." <u>Id.</u>  The SSA, however, will not do the following:

> [M]ake assumptions about the severity or functional effects of obesity combined with
> other impairments. Obesity in combination with another impairment may or may not
> increase the severity or functional limitations of the other impairment.  [The SSA]
> will evaluate each case based on the information in the case record.

<u>Id.</u>

The claimant has the burden of providing evidence as to how his obesity limits his

functioning.  <u>Burch</u>, 400 F.3d at 683.

Here the ALJ concluded Weltch's obesity was a severe impairment.  Tr. 26.  However,

contrary to Weltch's assertion, the ALJ considered Weltch's obesity in her RFC assessment,

stating, "[T]he claimant's left knee impairments and obesity limited her ability to lift more than

fifty pounds occasionally and twenty pounds frequently and limited her ability to stand and/or

walk more than about four to six hours a day."  Tr. 34.

In addition, Weltch did not allege any limitation based on her obesity and provided no

evidence as to how it impacts her ability to work.  While it is possible that Weltch's knee, neck,

back, and wrist conditions were exacerbated by obesity, she made no allegation as to how her

weight limited her functioning.  The ALJ is obligated to evaluate only the evidence presented in

the case record, and she did not err by declining to include further limitations in the RFC related

to obesity.  <u>See, e.g.</u>, <u>Perez v. Astrue</u>, No. CV 09-4600-MLG, 2010 WL 1051128, at *6 (C.D.

Cal. 2010) (holding ALJ did not commit reversible error by failing to explicitly discuss the

impact of plaintiff's obesity on his RFC where there was no evidence of functional limitations

due to obesity and where plaintiff did not point to any such evidence) (citation omitted).

In sum, the ALJ's reasons regarding Weltch's RFC are clear, convincing, and supported by substantial evidence.

### III. ALJ's Step Five Finding

Here the ALJ found Weltch could perform the occupations of customer service and appointment clerk as defined in the United States Department of Labor, Employment & Training Administration, Dictionary of Occupational Titles (4th ed. 1991) ("DOT").[6]  Tr. 37.  Weltch asserts she is unable to perform either of the occupations proposed by the vocational expert ("VE") because they both require occasional or repetitive use of the hands.  The Commissioner fails to respond to all of Weltch's arguments, and simply asserts the ALJ met her burden at step five by "first using the Guidelines as a framework and then relying upon the testimony of a vocational expert to identify five occupations that represented a significant number of jobs [Weltch] could perform."  Def.'s Br. at p. 9.

The Ninth Circuit has held that "[i]f the hypothetical [posed to the VE] does not reflect all the claimant's limitations, . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) (citing Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988)).  In posing hypothetical questions, an ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record.  Gamer v. Sec'y of Health & Human Servs., 815 F.2d 1275, 1279-80 (9th Cir. 1987).  Limitations that are supported by substantial evidence must

---

[6] The DOT is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  It classifies jobs by their exertional and skill requirements, and is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

be included in the question.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006).  "If

the assumptions in the hypothetical are not supported by the record, the opinion of the vocational

expert that the claimant has a residual working capacity has no evidentiary value."  Gallant v.

Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

        Here, in step two, the ALJ found Weltch's carpal tunnel syndrome was severe, and when

assessing Weltch's RFC, she found Weltch was limited to "occasional overhead reaching and no

repetitive use of her hands."  Tr. 26, 30, 35.  The ALJ failed to include those restrictions when

presenting the first hypothetical to the VE,[7] and the VE identified the following three jobs

Weltch could perform in the national economy: (1) assembly production (DOT 706.687-010); (2)

customer service (DOT 299.357-014); (3) and appointment clerk (DOT 237.367-010).  Tr.

328-29.  However, the record also shows the ALJ asked the VE whether any of the three jobs the

VE identified "require[d] the repetitive use of the hands,"  Tr. 330, and defined the term

"repetitive" as "greater than 5% of the day."  Tr. 328.  The VE identified only the assembly

production job (DOT 706.687-010) as meeting that requirement.  Tr. 330.

_____

        [7]  The ALJ posed two hypothetical questions to the VE.  In the first hypothetical, the ALJ
restricted the claimant to, among other things, an individual who was 47 years old;  was
right-hand dominant; could sit 8 hours in an 8-hour day and 2 hours at a time; could stand and
walk between 4 to 6 hours in an 8-hour day; could lift 50 pounds occasionally, 20 pounds
frequently, and ten pounds constantly; and should avoid repetitive squatting, crouching,
kneeling, stair climbing.  Tr. 328.
        In the second hypothetical, the ALJ restricted the claimant to the same person considered
in the first hypothetical, but with the following restrictions: (1) Able to "lift 20 pounds
occasionally, 10 pounds frequently, pushing and pulling . . . within the same limits"; (2) limited
to repetitive squatting, crouching, kneeling and climbing stairs; (3) able to "stoop" up to
two-thirds of the day and "balance" up to one-third of the day; and (4) able to "occasionally"
reach overhead, "occasionally" finger, and "frequently" handle.  Tr. 332.

22 - OPINION AND ORDER

Based on the record before me, and contrary to Weltch's assertion, the ALJ's finding that Weltch could perform the occupations of customer service (DOT 299.357-014) and appointment clerk (DOT 237.367-010) was proper and supported by substantial evidence.  Here the ALJ directed the VE to identify jobs which precluded the repetitive use of hands, and the VE testified that the customer service and appointment clerk jobs met that requisite.

Weltch asserts the term "repetitive" means something occurring "more than once," which it argues is its "usual meaning," citing the definition provided by Dictionary.com.  Pl.'s Br. at p. 19.  Weltch's assertion, however, is unavailing.

Weltch cites no authority, and I find none, which supports her assertion that the term "repetitive" means "more than once" in the social security context.  Further, a VE's opinion about a claimant's residual functional capacity has evidentiary value if the assumptions in the hypothetical are supported by the record.  See, e.g., Magallanes, 881 F.2d at 747, 757.  Here the ALJ stated, among other things, that Weltch's "description of dysesthesia of her 'palms' was noted as not typical for carpal tunnel syndrome, and she was able to tie a shoestring into a bow and identify a paperclip in her right hand with her eyes closed" during an evaluation in August 2005.  Tr. 33.  These findings are supported by the record.  Tr. 271-74.  The ALJ also noted "the record d[id] not demonstrate that [Weltch] sought ongoing medical or surgical care for hand symptoms, which may have improved or resolved her symptoms."  Id.  The Ninth Circuit has recognized that "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."  Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); see also Quevedo v. Chater, C-94-20506-RMW, 1995 WL 337993, at *3 (N.D. Cal. 1995) (holding

that claimant's failure to "seek a regular course of medical treatment . . . constitute[d] substantial evidence to support the finding of the ALJ that [claimant's] ability to perform light unskilled work or sedentary work was not significantly compromised by his alleged nonexertional limitations").

Based on the above, I conclude that the ALJ's RFC assessment, including her definition of the term "repetitive," is supported by substantial evidence in the record.  Accordingly, the ALJ did not err when giving her definition of the term to the VE.

Weltch also asserts the ALJ erred by omitting the limitations set forth by Dr. Buuck and those in her own testimony.  However, the ALJ properly discounted Dr. Buuck's opinion and properly found Weltch's testimony was not credible.  Accordingly, the ALJ was not obligated to include those limitations in the hypothetical questions.  Davis v. Astrue, No. CV-09-191-CI, 2010 WL 3069910, at *9 (E.D. Wash. 2010) (holding ALJ properly discounted doctor's opinions regarding disabling limitations, and therefore, ALJ was not obligated to include those limitations in the hypothetical question to the VE).

The ALJ did not err when making her findings at step five of Weltch's disability evaluation.

## <u>CONCLUSION</u>

The Commissioner's decision is based on substantial evidence.  This court affirms the

Commissioner's decision.

IT IS SO ORDERED.

Dated this 28th day of March 2011.


/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge